1  Chad Thomas Pratt, Sr., Esq.
   California State Bar No. 149746
2  Law Office of Chad Thomas Pratt, Sr.
   660 South Figueroa Street, suite 1960
3  Los Angeles, California 90017
   1.213.840.2423
4  chadprattsr@gmail.com
   Attorney for Plaintiff
5

6

7

8           United States District Court for the Central District of California
                    Western Division, First Street Federal Courthouse
9
   Scott Eric Rosenstiel,                    ) Case # 2:19-cv-96-PSG-JEM
10          Plaintiff,                       )
                                             ) NOTICE OF APPLICATION
11 v.                                        ) AND APPLICATION FOR
                                             ) ENTRY OF DEFAULT AND
12 Maximilian Sandor aka Joachim Steingruebner, ) DEFAULT JUDGMENT;
   and Does 1-10 Inclusive,                  ) Memorandum of Points and
13          Defendants.                      ) Authorities; Declarations;
                                             ) Exhibits; [Proposed] Judgment
14                                           ) date: 29 July 2019
                                             ) time: 1:30 p.m.
15                                           ) Courtroom No. 6A
16 _____)The Honorable Philip S. Gutierrez

17 TO DEFENDANT AND HIS ATTORNEY OF RECORD:

18         PLEASE TAKE NOTICE THAT on 29 July 2019 at 1:30 p.m., or as soon

19 thereafter as this matter may be heard, Plaintiff Scott Eric Rosenstiel will apply to this

20 Court, located inside the First Street Courthouse, 350 West 1st Street, Courtroom 6A,

21 Los Angeles, California 90012-4565, for entry of default and a default judgment

22 pursuant to FRCP 55(b)(2) against Defendant Maximilian Sandor aka Joachim

23 Steingruebner.  **This Application is timely brought because, under FRCP 55(b)(2),**

24 **only seven days' notice need be given when seeking entry of default judgment.**

25 **Nor is there anything in either the FRCP or the local rules stating that default**

26 **must be entered before default judgment may be applied for.  Indeed, there is no**

27

28  REQUEST FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT              1

**prohibition upon simultaneously applying for both.** In fact, the clerk's refusal to enter the default was wrongful because there is nothing in FRCP 55(a) conditioning the clerk's entry of default upon the Defendant having been served in the United States. Please read it for yourself:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default. FRCP 55(a).

Not hearing this Application now will only unnecessarily prolong these proceedings since Plaintiff is entitled to have Defendant's default entered, thereby causing there to be two hearings for what can just as well be done in one hearing.

At the hearing, Plaintiff will prove all of the following:

1. Per this Court's Order of 14 May 2019 (Docket Entry 16), Defendant was duly served by mail on 24 May 2019 with the first amended complaint ("FAC") and the other documents enumerated in the proof of service ("POS") which was filed on 1 June 2019. (The POS is Docket Entry 19, a declaration from the server is Entry 20, and a declaration from Plaintiff is Entry 21).

2. Pursuant to CCP 415.40, service by mail grants to the out-of-state defendant an additional ten days to respond. Accordingly, Defendant had to file a responsive pleading by 24 June 2019, but has failed to do so through the present day.

3. Accordingly, Plaintiff applied to the clerk to enter Defendant's default on 25 June 2019. The clerk refused to enter the default, giving as the reason that only the Court can enter default upon a Defendant served outside of the United States.

REQUEST FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT                    2

4.   As explained in Plaintiff's attached Declaration and Memorandum of Points and Authorities, Plaintiff is entitled to a judgment in the amount of $1,500.000.00.

5.   Defendant is not currently serving in the armed forces.

6.   Defendant is not a minor or an incompetent person.

7.   Defendant is not an officer or agency of the United States.

8.   Defendant is not a foreign state or a policy subdivision, agency or instrumentality of a foreign state.

9.   Per the attached Proof of Service, this completed Application was served upon Defendant's counsel of record by CM/ECF on 22 July 2019.


This Application is based upon this Notice of Application and Application, the accompanying Declaration of Plaintiff, the Memorandum of Points and Authorities and Exhibits attached hereto, the papers on file in this Action, and such oral and documentary evidence as may be presented at the hearing on this Application.


date: 22 July 2019


_____/s/_____
Chad Thomas Pratt, Sr., Esq., Attorney for Plaintiff


REQUEST FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT                3

# Table of Contents

**I. Plaintiff is Entitled to Substantial Damages Because the Usurpation of His Trusteeship Cost Him Some Half a Million Dollars.** . . . . . . . . . . . . . . . . 1

**II. A General Power of Appointment Confers the Right to Absolute Ownership Upon the Powerholder.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**III. A General Power of Appointment was Conferred Upon Plaintiff Because He Has the Power to "Perform and Function on Behalf of Any Individual."** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**IV. A General Power of Appointment was Conferred Upon Plaintiff Because He Has the Unilateral Power to Amend or Terminate the Trust at Any Time.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**V. Because the Zielkes Established ABG with an Intent to Defraud Creditors, It Would be Inequitable Not to Hold Them to the Terms of the Agreement.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**VI. The ABG Declaration Created a Strict Trust Which Vests Title to the Trust Res in the Trustee, While Denying It to the Beneficiary.** . . . . . . . . . . . 15

**VII. Plaintiff, as Trustee, is Entitled to Possession of the Premises.** . . . . . . . . . 21

1

## **Table of Cases**

2

3   *Estate of Dailey*, 130 Cal. App. 3d 993, 1st dist., 1982. . . . . . . . . . . . . . . . . . . . . . 4

4

5   *Estate of Kuttler*, 160 Cal. App. 2d 332, 2nd dist., 1958. . . . . . . . . . . . . . . . . . 4, 6, 15

6

7   *Estate of Rosecrans*, 4 Cal. 3d 34, 1971. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

8

9   *Estate of Thorndike*, 90 Cal. App. 3d 468, 473, 1st dist., 1979. . . . . . . . . . . . . . . . 7

10

11  *Galdjie v. Darwish*, 113 CA4th 1331, 1343, 2nd dist., 2003. . . . . . . . . . . . . . . . . 18

12

13  *Goldwater v. Oltman*, 210 Cal. 408, 71 ALR 871, 1930. . . . . . . . . . . . . . . . 16, 17, 21

14

15  *Hurd v. Commissioner*, 6 T.C. 819, 1946. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16

17  *In re Sung Soo Rim Irrevocable Intervivos Trust*, 177 B.R. 673, 676, Bankr. C.D. Cal.,

18  1995. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

19

20  *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486, 491, 492, S.D. Cal., 1983

21  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

22

23  *Irvin's Trust v. Commissioner*, 29 T.C. 846, 1958. . . . . . . . . . . . . . . . . . . . . . 13, 14

24

25  *Penny v. Wilson*, 123 Cal. App. 4th 596, 605, 2nd dist., 2004. . . . . . . . . . . . . . . . . 3

26

27  *Wolf v. Mitchell*, 76 Cal. App. 4th 1030 1036, 2nd dist., 1999. . . . . . . . . . . . . . . 18

28

Memorandum of Points and Authorities                    ii

1

2 **<u>Table of Other Authorities:</u>**

3

4 26 CFR 20.2041-1(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

5

6 26 CFR 20.2041-1(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

7

8 CalJur3D, "CORPORATIONS," vol. 15A, 2012 ed.. . . . . . . . . . . . . . . . . . . . 17, 18

9

10 Loring and Rounds: A Trustee's Handbook, Charles E. Rounds, Jr. & Charles E.

11 Rounds, III, 2015 Ed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

12

13 Probate Code 15205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

14

15 Probate Code 610. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

16

17 Probate Code 611(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

18

19 Probate Code 672. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

20

21

22

23

24

25

26

27

28

1

**Memorandum of Points and Authorities**

2

3    **I. Plaintiff is Entitled to Substantial Damages Because the Usurpation of His**

4    **Trusteeship Cost Him Some Half a Million Dollars.**

5          Plaintiff's sworn FAC exhibits all of the evidence upon which Plaintiff relies to

6    prove that he is has been the *de jure* trustee of the Alpha Beta Gamma Trust ("ABG")

7    since at least 29 January 2009, and hence entitled to (1) a declaration from this Court

8    so adjudging and further adjudging any act undertaken by Defendant as being null and

9    void *ipso facto*, (2) an injunction prohibiting Defendant from acting as trustee *in futuro*,

10   and (3) reformation and quiet title as to the 2015 deed of the subject property to ABG

11   in that it incorrectly identified Defendant - and not Plaintiff - as the trustee thereof.

12   Accordingly, Plaintiff will not burden this Court by making the same presentation again

13   here.  Instead, he will focus on why he is entitled to $1,500.000.00 in damages from

14   Defendant, as prayed for in his FAC.

15          Under the 2015 deed (Exhibit # 49 to Plaintiff's FAC), ABG holds title to a

16   residential property worth approximately $550,000.00[1].    As discussed below, the

17

18          1 Exhibit # 5 is an appraisal of the property made on Election Day 2016 by
19   Randy Sonns, California Certification # AR004056.  He valued it at $550,000.00 on
     numbered P. 2 thereof.  This is one year after the recordation of the quitclaim deed
20   identifying Sandor as trustee of ABG on 6 October 2015.  By way of comparison, on
     13 January 2016 Plaintiff had the property appraised by David M. Murray,
21   Certification No. AG001785, as of March of 2012, at $360,000.00 (Exhibit # 4).  So
     it would seem that a valuation of approximately $500,000.00 as of October of 2015
22   is appropriate.  Plaintiff seeks treble damages due to the fraudulent, malicious, willful,
     oppressive and reckless nature of Defendant's injury to Plaintiff.  However, Plaintiff
23   also wants to make it clear that he is unaware of Defendant owning any asset in the
     United States, while an American judgment rendered against a Brazilian resident
24   cannot be used to levy upon the judgment debtor's Brazilian assets due to the service
     not complying with the Inter-American Convention and Additional Protocol.
25   Nevertheless, Plaintiff feels he deserves a large judgment, and the Court's imposition
     of it may finally put an end to this long-running litigation since Sandor (who is 66
26   years old and only helping Gunter because he believes he is beyond the reach of U.S.
     process) will not want to come into an American court, be personally served, and then
27   have to worry about losing his home in Brazil to the judgment. Please see Plaintiff's
     attached Declaration.

28                                Memorandum of Points and Authorities                    1

trustee of ABG is the legal owner of the trust res.  Accordingly, adjudication of the trusteeship is determinative as to the legal ownership of the property.  Furthermore, as also discussed below, the trustee is vested with a general power of appointment over the trust res, which means that he can vest the entire res in anyone, including himself.  This in turn means that, when Defendant usurped Plaintiff's trusteeship, he lost the unfettered right to assign to himself the subject property.

## II. A General Power of Appointment Confers the Right to Absolute Ownership Upon the Powerholder.

Before discussing the effects of the general power of appointment conferred upon Plaintiff, he will first define the term:

As used in this part:

(a) "Appointee" means the person in whose favor a power of appointment is exercised.

(b) "Appointive property" means the property or interest in property that is the subject of the power of appointment.

(c) "Creating instrument" means the deed, will, **trust**, or other writing or document that creates or reserves the power of appointment.

(d) "Donor" means the person who creates or reserves a power of appointment.

(e) "Permissible appointee" means a person in whose favor a power of appointment can be exercised.

(f) "Power of appointment" means a power that enables a powerholder **acting in a nonfiduciary capacity** to designate a recipient of an ownership interest in or another power of appointment over the appointive property. The term does not include a power of attorney.

Memorandum of Points and Authorities                    2

(g) "Powerholder" means the person to whom a power of appointment is given or in whose favor a power of appointment is reserved.

Probate Code 610.

(a) A power of appointment is "general" only to the extent that it is **exercisable in favor of the powerholder**, the powerholder's estate, the powerholder's creditors, or creditors of the powerholder's estate, whether or not it is exercisable in favor of others.

Probate Code 611(a).

(a) A trust, other than a charitable trust, is created only if there is a beneficiary.

(b) The requirement of subdivision (a) is satisfied if the trust instrument provides for either of the following:

(1) A beneficiary or class of beneficiaries that is ascertainable with reasonable certainty or that is sufficiently described so it can be determined that some person meets the description or is within the class.

(2) **A grant of a power to the trustee or some other person to select the beneficiaries** based on a standard or in **the discretion of the trustee** or other person.

Probate Code 15205.

A general power of appointment confers upon the holder of the power the right to determine the ultimate recipient of the property subject to the power and may, if he or she chooses, **appoint the property to himself** or herself.

*Penny v. Wilson*, 123 Cal. App. 4th 596, 605, 2nd dist., 2004.

Memorandum of Points and Authorities                3

(11) **In legal effect such a power gives him an absolute ownership.**
(Estate of Carter, supra, 47 Cal.2d 200, 207;  [P. 339]  Estate of Kalt, supra, 16
Cal.2d 807, 812; Estate of Masson, supra, 142  Cal.App.2d 510, 512; Dallapi v.
Campbell, 45 Cal.App.2d 541, 547 [114 P.2d 646].)

*Estate of Kuttler*, 160 Cal. App. 2d 332, 338, 339, 2nd dist., 1958.


It is settled that a general power of appointment may be so unlimited as
to give its holder rights equivalent to absolute ownership. (Estate of Kuttler,
supra, 160 Cal.App.2d 332, 338-339, and cases cited; see 2 Witkin, Summary of
Cal. Law (1960) Real Property, § 136, p. 984.)

*Estate of Rosecrans*, 4 Cal. 3d 34, 40, 1971.


A power of appointment is a power given by the donor of property to the
donee, which enables the donee to designate the appointees or persons who are
to take the property at some future time. (3 Witkin, Summary of Cal. Law (8th
ed. 1973) Powers of Appointment, § 260, p. 1983.) A general power of
appointment is one which may be exercised in favor of anyone, including the
donee, and is equivalent to a grant of absolute ownership.

*Estate of Dailey*, 130 Cal. App. 3d 993, 998, 1st dist., 1982.


The trial court erred when it substituted its own discretion for that of the
executor. It is not the function of a court to determine who in the normal course
of events should be the objects of the testator's bounty, but rather, to determine
who the testator did, in fact, intend to make the object of his bounty.  It is not the
province of the trial court or a reviewing court to remake a will. (Estate of
Strong (1966) 244 Cal.App.2d 250, 254 [52 Cal.Rptr. 919].)

*Estate of Dailey*, 130 Cal. App. 3d 993, 999, 1st dist., 1982.

Memorandum of Points and Authorities                    4

Similarly, here it is not the province of this Court to re-write the ABG trust. To say that the Zielkes are disappointed by it is of course a tremendous understatement. Nevertheless, this is what they intentionally created and it would be inequitable for them not to be bound by the undesired results. Certainly they would be insisting upon its enforcement had the ABG Declaration achieved their desired outcome of defeating their creditors' claims.

## III. A General Power of Appointment was Conferred Upon Plaintiff Because He Has the Power to "Perform and Function on Behalf of Any Individual."

> **TRUSTEES' DECLARATION OF PURPOSE:** The **TRUSTEES**, by their resolution of purpose, may perform and function **for any purpose on behalf of any individual**, group or combination of individuals, severally or collectively.
>
> ABG Declaration, Numbered P. 5, para. 5[2].

> **TRUSTEES POWERS** : Shall be construed as general powers of a citizen of the **United States of America**, to do **anything any citizen may do** in any state or country...
>
> ABG Declaration, Numbered P. 2, para. 4.

While normally a trustee only has the power to "perform and function" for the purpose of befitting only the named beneficiary, here the trustee may "perform and function for any purpose on behalf of any individual..." This creates a general power of appointment:

---

[2] The entire "DECLARATION OF TRUST OF ALPHA BETA GAMMA TRUST" is Exhibit # 3 to Plaintiff's FAC.

1      The difference between a power and a trust was explained at page 266,

2 where it was said: "**No technical, special, or particular form of words is**

3 **necessary for the creation of a power of appointment**; if the  [P. 342]

4 testator's intention to confer the power appears from the entire will, full effect

5 will be given to such intention. In Thompson, Wills, 588, section 394, the rule

6 as supported by the authorities is stated as follows: 'No particular form of words

7 is necessary for the creation of a power; any expression, however informal, being

8 sufficient if it clearly indicates an intention to give a power. **All that is**

9 **necessary is an indication of a clear intention to accomplish some proper**

10 **purpose by the donor through the donee.** It may be conferred by express

11 words, or may be necessarily implied. . . .'"

12      *Estate of Kuttler*, 160 Cal. App. 2d 332, 341, 342, 2nd dist., 1958.

13

14      The executor contends that, contrary to the trial court's determination,

15 there is "no power of appointment language in the Lillian T. Rosecrans Trust,"

16 that "No one is given a power or discretion to appoint to anyone." (3) However,

17 no particular form of words is necessary to create a power of appointment.

18 (Estate of Kuttler (1958) 160 Cal.App.2d 332, 334, 337 [7] [325 P.2d 624] and

19 citations.)

20      *Estate of Rosecrans*, 4 Cal. 3d 34, 38, 1971.

21

22      A broader power could not have been written.  There is no doubt that a general

23 power of appointment is conferred upon the trustee.  Now the Court might wonder what

24 happens should Plaintiff fail to exercise his general power of appointment?  The answer

25 is that the named beneficiary would receive the trust res (upon termination or earlier)

26 as takers in default:

27

28                        Memorandum of Points and Authorities        6

(a) Except as provided in subdivision (b), if the powerholder of a discretionary power of appointment fails to appoint the property, releases the entire power, or makes an ineffective appointment, in whole or in part, the appointive property not effectively appointed passes to the person named by the donor as taker in default or, if there is none, reverts to the donor.

(b) If the powerholder of a general power of appointment makes an ineffective appointment, an implied alternative appointment to the powerholder's estate may be found if the powerholder has manifested an intent that the appointive property be disposed of as property of the powerholder rather than as in default of appointment.

Probate Code 672.


**The donor usually also specifies who will be entitled to the property if the power is not exercised or if an attempted exercise is invalid.** The person who becomes entitled to the property in such a situation is generally referred to as **a taker in default of appointment**." **A general power of appointment is one which may be exercised in favor of anyone, including the donee, and is equivalent to a grant of absolute ownership.**

*Estate of Thorndike*, 90 Cal. App. 3d 468, 473, 1st dist., 1979.


It is not uncommon for a trust to confer a power of appointment upon a trustee or other person, and then name specified beneficiaries who will be takers in default in the event the power goes unexercised. For example, one fairly common usage is for a surviving spouse could have a power of appointment which she can exercise to the extent that the value of the estate exceeds the decedent's personal estate tax exemption amount, with the exempt amount being held for named beneficiaries (such as the couple's children).

**IV. A General Power of Appointment was Conferred Upon Plaintiff Because He Has the Unilateral Power to Amend or Terminate the Trust at Any Time.**

The trustee has the unilateral power to terminate the trust at any time:

> **DURATION - CLOSURE:** ... [¶] **THIS TRUST** shall continue for a period of 25 years from date, unless the **TRUSTEES** shall unanimously determine upon an earlier date, in which case **THE TRUST** shall be proportionately and in prorata manner distributed to the **BENEFICIARIES**. ... [¶]

> **RENEWAL:** Upon expiration of this AGREEMENT the then **TRUSTEES**, if they so desire and believe that said **TRUST** should not be concluded or closed may renew this TRUST AGREEMENT for a like, longer, or shorter period of time.

ABG Declaration, Numbered P. 6, paras. 2-4.

Because the trustee can not only terminate the trust at any time, but extend it beyond its default term, without limitation, "for a... longer... period of time," if not for this power of appointment, the trust would violate the absolute ninety-year rule against perpetuities imposed by Prob. C 21205. Fortunately, the <u>right</u> of the trustee to vest the trust res in himself precludes this problem in that the power of a person to vest property <u>in himself</u> means that the interest has effectively <u>vested</u> <u>immediately</u>, even if the power is not exercised and the trust res is ultimately distributed to the taker in default (i.e. the named beneficiary). So the power is not superfluous or erroneous, but necessary to avoid violating the rule against perpetuities.

In addition to the power to terminate, the trustee also has the power to "amend... in compliance of any lawful act":

**THE TRUSTEES** may amend its **DECLARATION OF TRUST** and/or its **Charter**, as agent, in compliance of any lawful act and to act as specific **ATTORNEY-IN-FACT**.

ABG Declaration, Numbered P. 5, para. 6.

**TRUSTEES POWERS** : Shall be construed as general powers of a citizen of the **United States of America**, to do **anything any citizen may do** in any state or country...

ABG Declaration, Numbered P. 2, para. 4.

So here the trustee may "do <u>anything</u> any citizen may do" and has the power to "amend" the ABG Declaration "in compliance of <u>any lawful act</u>." It would be hard to imagine a broader power to amend. It may be impossible to do so. The powers to unilaterally amend or terminate certainly constitute a general power of appointment:

(c) Definition of "general power of appointment"--(1) In general. The term "general power of appointment" as defined in section 2041(b)(1) [26 USCS § 2041(b)(1)] means any power of appointment exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate...

26 CFR 20.2041-1(c).

(b) Definition of "power of appointment"--(1) In general. The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. Similarly,

Memorandum of Points and Authorities                                    9

a power given to a decedent to **affect the beneficial enjoyment of trust property or its income by altering, amending**, or revoking the trust instrument or **terminating the trust is a power of appointment**. If the community property laws of a State confer upon the wife a power of testamentary disposition over property in which she does not have a vested interest she is considered as having a power of appointment. A power in a donee to remove or discharge a trustee and appoint himself may be a power of appointment. For example, if under the terms of a trust instrument, the trustee or his successor has the power to appoint the principal of the trust for the benefit of individuals including himself, and the decedent has the unrestricted power to remove or discharge the trustee at any time and appoint any other person including himself, the decedent is considered as having a power of appointment.

26 CFR 20.2041-1(b).

Here it is simply beyond peradventure that the ABG Declaration confers upon the trustee the "power... to **affect the beneficial enjoyment of trust property or its income by**... **terminating the trust is a power of appointment**." When we add to this the trustee's powers to "perform and function for any purpose on behalf of any individual, group or combination of individuals, severally or collectively" and "amend... in compliance of any lawful act," we see that a general power of appointment was indeed conferred upon the trustee. Please consider the following case in which these issues were discussed:

He[3] further determined that the trust was includible in decedent's gross estate under section 811 (d) (2) of the code as one where the enjoyment was, at

---

3 "He" being the Commissioner of Internal Revenue.

Memorandum of Points and Authorities                    10

the date of decedent's death, subject to change through the exercise of a power to alter, amend, or revoke.

*Hurd v. Commissioner*, 6 T.C. 819, 821, 1946.

Section 811 (d) (2), dealing with transfers on or prior to June 22, 1936, embraces and includes a power of termination. Commissioner v. Estate of Holmes, 326 U.S. 480. The right of the cotrustees to pay over, at any time, the entire corpus of the trust to the decedent's wife constitutes a power to terminate. The petitioner does not seriously contend otherwise. Nor does the fact that decedent's powers in connection with the trust property were exercisable only in his capacity as trustee take the transfer beyond the reach of the section here in question. It is established that section 811 (d) (2) embraces such powers, irrespective of the capacity in which they are exercisable by the settlor. Welch v. Terhune, 126 Fed. (2d) 695; Union Trust Co. of Pittsburgh v. Driscoll, 138 Fed. (2d) 152; Estate of Albert E. Nettleton, 4 T. C. 987.

However, we need not rest our conclusion solely upon the fact that the decedent could terminate the trust. In addition to that right, the cotrustees were authorized to vary the enjoyment of the trust property.  They could pay over or expend all or a part of the income for the benefit of the daughter and her survivors or they could distribute all or any portion thereof to the wife. It appears that they may have had authority to accumulate the income. As to the principal, they could, in their discretion, pay it over to the wife in whole or in part or leave it for eventual distribution to the remaindermen. **The right to determine by whom and in what proportions the trust property shall be taken** brings the trust within section 811 (d). Estate of Albert E. Nettleton, supra.

*Hurd v. Commissioner*, 6 T.C. 819, 822, 1946.

Memorandum of Points and Authorities                                    11

The taxpayer in *Hurd* could remove the incumbent, appoint herself as successor, and had the power to distribute the trust res to herself once she assumed office. The court therefore ruled that she had a general power of appointment (regardless of whether or not she actually undertook all of these actions). Here Plaintiff is already the trustee and has the power to appoint the entire trust res to himself, so there are actually fewer steps to reach the same result.

**V. Because the Zielkes Established ABG with an Intent to Defraud Creditors, It Would be Inequitable Not to Hold Them to the Terms of the Agreement.**

The ABG Declaration contains these unusual provisions because, as this Court ruled in its Judgment of 14 December 2011, the Zielkes set it up in order to defraud their creditors (Exhibit # 2, numbered P. 2, para. 6). In fact, the indenture used to create ABG was floating around for at least fifty years prior to its execution by the Zielkes in 1998. Please consider the following case from 1958, in which the Tax Court commented on this "ridiculously worded instrument":

> The instrument with which we are dealing is a copyrighted, printed instrument prepared by the National Pure Trust Service. It is provided that it is to be administered by "Natural Persons, Holding Title in Joint Tenancy, Acting Under Their Constitutional Rights as Citizens of the United States of America." The masthead on each page of the instrument shows an eagle perched on an open book, in which it is written "U. S. Constitutional Protection for Home Business Family Estate."
>
> The body of the instrument is a wilderness of high-sounding words and phrases, obviously designed as selling points for the service by the author, rather than to serve a genuine trust need. It is solemnly proclaimed that the "Purport" of the instrument is to convey property to trustees "to provide for a sane and

economical administration by natural persons acting in a fiduciary capacity," the parties thereto "preferring that the Trustees act solely within their constitutional rights as based upon their common law rights and immunities vouchsafed to citizens of the United States of America and defined in Article IV, Section 2 [quoting], and Article VI, Section 2 [incorrectly quoting a portion of the Article]; and the 14th Amendment thereof, Providing, that 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.'"

*Irvin's Trust v. Commissioner*, 29 T.C. 846, 849, 1958.

We refrain from extensive quotes from the 11-page printed instrument but feel that we must set out the following paragraph:

> **Trustees' powers shall be construed as general powers of citizens of the United States of America**, to do anything any citizen may do in any state or country, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein specially noted, at their discretion for the benefit of this Trust, such as, viz.: buy, sell or lease land for surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits, of any form, patents, trademarks or copyrights; buy, sell, or conduct mail-order business, or branches thereof, operate stores, shops, factories, warehouses, or other trading establishments or places of business of any kind, construct, buy, sell, lease or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project, pledging the Trust property for the payment thereof; hypothecate assets, property, or both, or

Memorandum of Points and Authorities                    13

the Trust in business projects; own stock in, or entire charters of corporations, or other such properties, companies or associations as they may deem advantageous.

As if the above quote is not deemed a broad enough grant of power to enter and conduct any conceivable business, there is added this neat little clause: "Resolutions of the Board of Trustees authorizing a  [P. 850]  special thing to be done shall be evidence that such act is within its powers." **Under similar powers granted to a corporation, it would have been virtually impossible for the corporation to have committed an ultra vires act.**

*Irvin's Trust v. Commissioner*, 29 T.C. 846, 849, 850, 1958.

It would serve no useful purpose to further detail the ridiculously worded instrument. It is perfectly obvious that the Elmer Irvin Trust is even more similar in form to a corporation than the organization in the Morrissey case, supra.

*Irvin's Trust v. Commissioner*, 29 T.C. 846, 850, 1958.

**ADMINISTRATION:** The **TRUSTEES** shall regard this instrument as their principal guide, supplemented from time to time by their resolutions that cover the contingencies as they arise and are recorded in the Minutes of their meetings, which are the **BY-LAWS, RULES AND REGULATIONS OF THIS TRUST**.

ABG Agreement, Numbered P. 5, para. 2.

So here we see that, to the extent that the powers granted in the ABG Declaration may be found to be insufficient, as in *Irvin's Trust*, they can be "supplemented" by the trustee.

Memorandum of Points and Authorities                                        14

To be sure, Defendant will probably argue that neither he nor the Zielkes understood these provisions, which is probably true. However, this would not effect the outcome:

It is also well to bear in mind the fact that the search for a testatrix' intention does not involve a determination that she understood the legal effect of the directions found to have been expressed by her in the will. The effect of what she has provided is governed by substantive law.

*Estate of Kuttler*, 160 Cal. App. 2d 332, 335, 2nd dist., 1958.

## VI. The ABG Declaration Created a Strict Trust Which Vests Title to the Trust Res in the Trustee, While Denying It to the Beneficiary.

The reason why the ABG Declaration confers such broad powers upon the trustee, while barring the beneficiary from any control whatsoever, is that under California law beneficiaries of a business trust are protected from personal liability for trust debts so long as they do not have so much power over either the trustee or the trust estate so as to constitute them general partners. Hence, the author of the ABG Declaration erred on the side of caution:

(1) Generally stated, a trust of this nature is created wherever several **persons transfer the legal title in property to trustees, with complete power of management in such trustees free from the control of the creators of the trust**, and the trustees in their discretion pay over the profits of the enterprise to the creators of the trust or their successors in interest. As thus defined it is apparent that such a trust is created by the act of the parties and does not depend on statutory law for its validity. In the case of Hecht v. Malley, 265 U.S. 144,

146 [68 L. Ed. 949, 44 Sup. Ct. Rep. 462, 463], Mr. Justice Sanford referred to such organizations as follows:

"The 'Massachusetts trust' is a form of business organization, common in that state, consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided. These certificates, [P. 417] which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds.

"Under the Massachusetts decisions these trust instruments are held to create either pure trusts or partnerships, according to the way in which the trustees are to conduct the affairs committed to their charge. If they are the principals and are free from the control of the certificate holders in the management of the property, a trust is created; but if the certificate holders are associated together in the control of the property as principals and the trustees are merely their managing agents, a partnership relation between the certificate holders is created."

*Goldwater v. Oltman*, 210 Cal. 408, 415-417, 71 ALR 871, 1930.

By the weight of authority, where the trustees have complete control of the business, the creators of the trust are treated as are the cestuis que trust of an ordinary equitable trust, and are exempt from direct personal liability to the creditors of the business; but if the trustees are subject to the [P. 419] control of the creators of the trust, the latter or their successors are liable as partners.

Memorandum of Points and Authorities                                    16

(Rand v. Morse, 289 Fed. 339; Hart v. Seymour, 147 Ill. 598 [35 N. E. 246]; Williams v. Boston, 208 Mass. 497 [94 N. E. 808]; Frost v. Thompson, supra.) *Goldwater v. Oltman*, 210 C 408, 418, 419, 71 ALR 871, 1930.

In general, where trustees of a so-called "business trust" have complete control of the business, the creators of the trust are treated as the beneficiaries of an ordinary equitable trust and are exempt from direct personal liability to creditors of the business, but if the trustees are subject to the control of the creators of the trust, the creators of their successors are liable as partners. [2 Bariffi v. Longridge Development Co., 156 Cal. App. 2d 583, 320 P.2d 192 (2d Dist. 1958); Engineering Service Corp. v. Longridge Inv. Co., 153 Cal. App. 2d 404, 314 P.2d 563 (2d Dist. 1957).]

CalJur3D, "CORPORATIONS," vol. 15A, sec. 574, P. 70, 2012 ed.

It is sometimes difficult to determine whether an organization should be treated as a partnership or as a distinct commercial enterprise apart from a partnership. It is usually said that the distinction between business trusts that are regarded as ordinary partnerships and those that are regarded as ordinary trusts turns on the provisions of the [P. 66] trust agreement or declaration, those trusts where the shareholders are given substantial control of the management of the trust property being regarded as partnerships and those where the shareholders have no such control being regarded as ordinary trusts, the same as the usual testamentary trusts. [5 Goldwater v. Oltman, 210 Cal. 408, 292 P. 624, 71 A.L.R. 871 (1930).]

It has been held that where the control of a trustee is limited and the control over the trustee by the beneficiaries is too complete to permit classification of the enterprise as a Massachusetts trust, a species of partnership

Memorandum of Points and Authorities                                    17

is created.  It makes no difference that the beneficiaries exercise their control by and through a "business manager" where the beneficiaries have expressly appointed the manager as their agent for the purpose of controlling the operations of the trustee.

[6 Bernesen v. Fish, 135 Cal. App. 588, 28 P.2d 67 (4th Dist. 1933).

[      As to the distinction between a business trust and a joint-stock company, see § 561.]

CalJur3D, "CORPORATIONS," vol. 15A, sec. 570, Pp. 65, 66, 2012 ed.

A trustee - and not the beneficiary - is the legal owner of the trust res; and this is true whether the trust is set up for estate planning purposes or to run a business. Please note that the following two cases come to this conclusion, even though the first two involved ordinary trusts while the third and fourth ones involved business trusts:

Unlike a corporation, a trust is not a legal entity.  **Legal title to property owned by a trust is held by the trustee**, and common law viewed the trustee as the owner of the trust's property."

*Galdjie v. Darwish*, 113 CA4th 1331, 1343, 2nd dist., 2003.

Generally, **the beneficiary of a trust, having no legal title or ownership interest in the trust assets**, is not the real party in interest and may not sue in the name of the trust. (Pillsbury, supra, 22 Cal. App. 4th at p. 753; Saks, supra, 7 Cal. App. 4th at p. 427.)

*Wolf v. Mitchell*, 76 Cal. App. 4th 1030 1036, 2nd dist., 1999.

California law recognizes "business trusts" as a type of profit-oriented, limited liability business entity, regulated under the California Business and

Memorandum of Points and Authorities                                              18

Professions Code. Cal. Bus. & Prof. Code § 14001 (West 1987). **Trustees of business trusts hold legal title with complete power of management.** The creators of the trust share in the profits. Goldwater v. Oltman, 210 Cal. 408, 416, 292 P. 624 (1930).

*In re Sung Soo Rim Irrevocable Intervivos Trust*, 177 B.R. 673, 676, Bankr. C.D. Cal., 1995.

**In business trusts, as in all valid trusts, legal title to the property** [P. 492]  of the estate is **vested in the trustee**, subject only to the execution of the trust. Cal.Civ.Code § 836; Crystal Pier v. Schneider, 40 Cal.App. 379, 381, 180 P. 948 (1919); Reagh v. Kelley, 10 Cal.App.3d 1082, 1097, 89 Cal. Rptr. 425 (1970); see also Morrissey v. Commissioner of Internal Revenue, supra, 296 U.S. at 359.

*In re Tru Block Concrete Products, Inc.*, 27 B.R. 486, 491, 492, S.D. Cal., 1983.

The ABG Declaration explicitly confers ownership of the trust res upon both the original and successor trustees:

**THE GRANTOR/CREATOR** for and in consideration of the objects and purposes herein set forth and other considerations of value the receipt of which is hereby acknowledged, does hereby convey and deliver into said **TRUSTEES, IN-TRUST**, who are to **hold title** in joint tenancy and not as tenant in common, the sum of $10.00 in cash **and other considerations of value**, which shall form **the corpus of this Trust**.

ABG Declaration, Numbered P. 1, para. 2.

Memorandum of Points and Authorities                                    19

1    The signing and acknowledging of the AGREEMENT by the herein above

2    **TRUSTEES** or the signing and acknowledging of appropriate minutes by

3    **TRUSTEES** subsequently elected or appointed, shall constitute their acceptance

4    of this **TRUST**; and the **TRUST** property, assets and emoluments thereof shall

5    immediately vest in the new **TRUSTEE** or **TRUSTEES** without any further act

6    or conveyance.

7    ABG Declaration, Numbered P. 2, para. 2.

8

9    Per numbered P. 2, para. 1 of the ABG Declaration, "a Trustee may resign or be

10   removed from office by a resolution of unanimous concurrence of the remaining

11   **TRUSTEES** when in their opinion said **TRUSTEE** shall have been guilty of fraud,

12   malfeasance in office, gross neglect of duty, or for cause." The purpose of this clause

13   is to ensure that ABG would qualify as a strict trust and avoid the imposition of

14   personal liability by exclusively conferring upon the trustee - and not the settlor or

15   beneficiary - the power to remove and replace trustees in the ABG Declaration. Then

16   this power is further limited to cause, which secures a large measure of independence

17   to each trustee. To be sure, later in the same paragraph it states, "Should the entire

18   Board of Trustees become vacant, *Gunter Zielke* at, and/or a Court of Equity may

19   appoint one Trustee..." Since a trustee can only be removed for cause, this power is not

20   a power reserved to the settlor to control the trustees through the power of removal.

21

22   Even in those states that recognize the limitation of liability of certificate

23   holders it is generally held that **the power to elect trustees and fill any**

24   **vacancies in the board gives the certificate holders such ultimate control**

25   **over the trustees that the organization will be treated as a partnership and**

26   **not a true trust**. (Frost v. Thompson, supra; Horgan v. Morgan, supra; 23

27   Columbia L. Rev. 423, 433-435.) (2) That rule appeals to us as the correct one

28   Memorandum of Points and Authorities                                    20

to apply. **If the trustees are subject to being removed by the shareholders,
and are dependent upon them for election, it is apparent that the ultimate
control of the organization rests in the shareholders.** It therefore follows that
the Haegelin case is only authority for the point that where the trustees are
subject to election by the shareholders, the latter exercise ultimate control of the
organization, and the organization is a partnership and not a true trust.

*Goldwater v. Oltman*, 210 C 408, 420, 71 ALR 871, 1930.


Furthermore, the trust is irrevocable per numbered P. 6, para. 2. So Gunter, as
settlor, cannot get the trust res back through recocation. Again, this is what he
voluntarily did in his attempts to defraud the taxing authorities.

To be sure, the Zielkes were confused as they were not particularly concerned
with inside liabilities (*i.e.* the ability of creditors of the trust to reach the beneficiary's
personal assets to satisfy a claim against the trust), but rather outside liabilities (*i.e.* the
ability of the beneficiary's personal creditors to piece into the trust [a "reverse pierce"]
to satisfy their claims against the beneficiary with the trust assets). However, the
Zielkes' failure and disappointment is no cause not to enforce the ABG Declaration as
written merely because it failed to achieve the Zielkes' fraudulent purpose.


## VII. Plaintiff, as Trustee, is Entitled to Possession of the Premises.

Regardless of the trustee's powers, Plaintiff is entitled to possession both
because (as discussed above) he not only has legal title to the trust res, but also because
he is entitled to possession. Conversely, the beneficiary is explicitly excluded from
having any possessory interest in the trust res. Please consider numbered paragraphs
"A," "B" and "C" of numbered P. 1 of the ABG Declaration:

A.  Beneficial Certificates convey NO interest of any kind in THE TRUST assets (corpus) nor any undivided interest therein.

B.  Beneficial Certificates convey NO voice in the management or control of **THIS TRUST**.

C.  Beneficial Certificates convey DO CONVEY a right to receive the certificates' pro rata share of emoluments that MAY BE distributed by the action of the MAJORITY of THE TRUSTEES.

Ownership of a **BENEFICIAL CERTIFICATE** shall not entitle the holder to any legal title in or to the **TRUST PROPERTY**, nor any undivided [P. 6] interest therein, nor in the management thereof, nor shall the death of a holder entitle their heirs or legal representatives to demand any partition or division of the property of the **TRUST**, nor any special accounting...

ABG Declaration, Numbered pp. 5-6.

The trustees are expressly empowered to invest in non-income producing investments:

**TRUSTEES POWERS** : Shall be construed as general powers of a citizen of the **United States of America**, to do anything any citizen may do in any state or country...

ABG Declaration, Numbered P. 2, para. 4.

Investments need not be diversified, may be of a speculative nature but not wasteful nature, and may be made or **retained with a view to possible increase in value**. ... **They are expressly authorized to invest in non-income-earning property if in their judgment** the best interest of the Trust estate will be served

Memorandum of Points and Authorities                    22

thereby.   The Trustees, except as herein otherwise specifically provided, shall have as wide latitude in the selection, retention, and making of investments as an individual would have in retaining or investing his own funds, and without the necessity of obtaining the written or oral consent of any beneficiary, or other interested individual or entity, or the consent or approval of any court.

ABG Declaration, Numbered P. 3, para. 3.

Because a beneficiary not only has no right to possession of trust property under the ABG Declaration, but is explicitly excluded therefrom, the normal default rule applies:

The beneficiary has no right to the possession of the trust property unless there is clear indication that the settlor intended otherwise,

[55 Bogert, Trusts and Trustees §181 n. 14 and accompanying text.]

such as in the case of a personal trust under which the beneficiary is entitled to occupy an entrusted residence.

[56 3 Scott & Ascher §13.2.6.]

Loring and Rounds: A Trustee's Handbook, Charles E. Rounds, Jr. & Charles E. Rounds, III, sec. 5.4.1.3, P. 396, 2015 Ed. (Emphasis in original.)

*[C]o-trustees brought a Mercedes-Benz with trust principal, took title in the name of one of them, and put the life beneficiary in possession.  A court-appointed additional trustee insisted that the automobile be sold and the proceeds properly invested.  The two original trustees took possessino of the automobile and the life beneficiary sued to recover possession.  It was held that, while the life beneficiary might be able to sue to surcharge the trustee for breach of trust, she was not entitled to possession of the automobile.*

Memorandum of Points and Authorities                                    23

[65 2A Scott on Trusts §170.17 n.2 (discussing Boalt v. Hanson, 412 So. 2d 880 (Fla. Ct. App. 1982).

In the absence of statute, decision, or the settlor's contrary intention, **the trustee, as holder of the legal title, is entitled to the possession of the real property; thus the trustee may eject the beneficiary**.

[66 See generally 2A Scott on Trusts §175.]

Loring and Rounds: A Trustee's Handbook, Charles E. Rounds, Jr. & Charles E. Rounds, III, sec. 3.5.2.1, P. 157, 2015 Ed. (Emphasis in original.)

Ordinarily the right to possession of real estate and chattles belongs to the trustee,

[66 Bogert, Trusts and Trustees §181 n. 14 and accompanying text.]

but if the settlor intended that the beneficiary have the use of the property in specie, the beneficiary will be entitled to possession.

[67 Bogert, Trusts and Trustees §181 n. 14 and accompanying text.]

Loring and Rounds: A Trustee's Handbook, Charles E. Rounds, Jr. & Charles E. Rounds, III, sec. 5.4.1.3, P. 396, 2015 Ed. (Emphasis in original.)

It should also be noted that, not only is the beneficiary of ABG explicitly precluded from both possession and any managerial authority over trust property (which was done in order that the trust would qualify as a strict trust so that the beneficiaries could not be held liable as partners), but Plaintiff already has a judgment of possession against the Zielkes personally. On 15 July 2016 he filed an eviction action against them for forcible entry & detainer in the Los Angeles superior court, Case No. 16U08017, it went to judgment in his favor on 29 September 2016 (Exhibit # 6), and a writ of possession was issued on 10 November 2016 (Exhibit # 7), which the sheriff served on 29 December 2016 (as evidenced by the return of writ which the

Memorandum of Points and Authorities                                    24

sheriff later filed, Exhibit # 8).  Hence, the determination of the *de jure* trusteeship will determine possession.  Because the trustee is entitled to possession, Plaintiff therefore requests that this Court's judgment explicitly grant it to him.  The only other person who could possibly be entitled to possession would be Sandor, or a person deriving his possessory right from either Sandor or Plaintiff[4].

Finally, another ground for the imposition of damages is that Plaintiff, as trustee, is entitled to both compensation and to set his own compensation, which he has been deprived of through Defendant's usurpation:

> **COMPENSATION: TRUSTEES** may pay contractors or agents and may pay themselves and officers such type reasonable compensation for their services as may be determined by a majority of the **BOARD OF TRUSTEES** or assigns.
>
> ABG Declaration, Numbered P. 5, para. 4.

For each and all of the foregoing reasons,  Plaintiff prays that this Court enter Judgment as prayed in his FAC.

Respectfully submitted,

Date: 22 July 2019

/s/
_____
Chad Thomas Pratt, Sr., Esq., Esq., Attorney for Plaintiff

---

4 While it's true that Plaintiff let the property to Danniel De La Madrid on 20 February 2019, and they recorded their lease that same day, Instrument No. 20190151751, the only potential contenders for possession are the Zielkes, Plaintiff and Defendant.  Any other person would be claiming under one of them. Nevertheless, Plaintiff calls the Court's attention to his proposed judgment, which states, "Subject to any lease entered into by which Plaintiff under which he has granted possession to any other person, it is hereby adjudged and declared that Plaintiff is entitled to possession of the premises."